**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**GREGORY OWENS** **PLAINTIFF**

**VS.** **No. 4:25-cv-01272 BSM/PSH**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration** **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Gregory Owens ("Owens") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Bisignano") to

deny his claims for Supplemental Security Income[1] ("SSI") and disability insurance benefits[2] ("DIB"). Owens contends the Administrative Law Judge ("ALJ") erred in five ways: (1) by rejecting Dr. Jacob Davis' ("Davis") psychiatric opinion as inconsistent with his own prior treatment notes when Davis incorporated those notes before concluding the plaintiff could not sustain a typical work month; (2) by formulating a residual functional capacity ("RFC") which did not adequately account for Owens' moderate limitation in concentration, persistence, and pace where the RFC contained no restrictions on production quotas, time off task, or sustained attention and the ALJ's Step Three findings established Owens is easily disrupted and requires redirection; (3) by formulating an RFC where the ALJ found three non-severe physical impairments but included no physical limitations and provided no functional analysis explaining how those conditions were considered; (4) by erroneously evaluating the opinion of APRN Reed ("Reed") by improperly conflating the separate regulatory standards of supportability and consistency; and (5) by erroneously excluding evidence by failing to conduct the required good cause inquiry before declining to admit the evidence.

---

[1] The application for SSI was filed on July 6, 2023.
[2] The DIB application was filed on June 28, 2023.

The parties ably summarized the medical records and the testimony given at the telephonic administrative hearing, which was conducted on October 21, 2024. (Tr. 43-61). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Bisignano's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from June 17, 2022, the alleged onset date, through December 19, 2024, the date of the ALJ's decision. (Tr. 21-34).

The undersigned finds substantial evidence supports the decision of Bisignano and recommends the complaint be dismissed.

*The Administrative Hearing:*

Questioned by his attorney, Owens, aged 60, stated he lived with his partner in a single-story home. He explained his partner tended to the yard and cleaning while Owens tried his best to prepare meals. Citing severe depression, Owens said he struggled to prepare meals in part because of being "immobilized up to 18 hours within a 24-hour period." (Tr. 48). His attempts to help in the yard with a leaf blower or lawn mower resulted in swelling in his hands and numbness the following day.

Owens described a "depression onslaught" in June 2022 after losing his last job. (Tr. 49). In addition to the depression, he had problems with his left foot and hammertoe requiring surgery (he stated he had right foot surgery in 2016). Owens

stated he was hospitalized twice for mental health issues, including PTSD, severe depression, and suicidal thoughts. After being diagnosed with depression he was treated with Spravato and later took Clopidogrel. At the time of the hearing, Owens stated he continued treatment with Spravato, takes clonazepam for anxiety, takes cyproheptadine and clonidine for PTSD nightmares, and pregabalin for nerve pain in his shoulder and feet. Owens noted the pregabalin had side effects, making him sleepy and unstable and dizzy. Further, Owens described receiving a heart stent to address blockage, taking metoprolol and clopidogrel as anti-clotting medications, and also taking lisinopril and hydrochlorothiazide. He additionally stated he had taken medication for arthritic pain (celecoxib or meloxicam) since 2011. Asked if he could stand for an eight-hour workday, Owens cited foot pain and unsteadiness on his feet and limping, as well as stiffness in neck, back, arms, and hands as barriers. Owens said he struggled lifting his arms above his head and had deficits in feeling and strength in his hands.

Owens recounted his work history, including his last job as a project manager at Hocott's Nursery from March to June 2022. Before that, he was at Prater-Built Cabinets from May 2021 to March 2022. Prior to that, Owens was in sales at Tuff Shed from February to April 2020, a job which ended due to COVID. In 2018, Owens was briefly self-employed, and prior to that he worked at Today's

Office. When asked if he could return to previous jobs, Owens said his "chief issue" with returning to Hocott's or Prater-Built was "the emotions I wear on my sleeve." (Tr. 56). He recalled that an employer in the 1990's said he was "oversensitive." *Id.* He described struggles with surprises in the workplace, hindering his concentration and his ability to "gather and regather thoughts." (Tr. 56-57).

Stefanie Ford ("Ford"), a vocational expert, testified. She reviewed four past relevant positions held by Owens – landscape architect, cabinet maker, retail sales clerk, and inventory clerk. The ALJ asked Ford to consider a hypothetical worker of Owens' age, education, and experience, who could perform a full range of medium work with the following restrictions: able to perform simple, routine, and repetitive tasks; can understand, follow, and remember job instructions; can have occasional contact with supervisors, co-workers, and the public; and can adjust or adapt to changes in the workplace. Ford indicated the hypothetical worker could not perform any of Owens' past relevant work. The hypothetical worker could, however, perform the jobs of kitchen helper, floor waxer, and hand packager, according to Ford. If the hypothetical question was altered to less than sedentary work with numerous other physical and mental restrictions, Ford stated no jobs would be available. (Tr. 57-60).

*The ALJ's Decision*

Following the administrative hearing the ALJ, in his December 19, 2024 decision, determined that Owens had the severe impairments of major depressive disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD"). The ALJ found there were medically determinable impairments which were not severe: foot fracture, arthritis/degenerative joint disease, and hypertension. The ALJ stated he considered all of Owens' medically determinable impairments, including those that were not severe, in assessing his RFC.

The ALJ found Owens did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ specifically addressed whether Owens met Listings 12.04, 12.06, and 12.15 (mental impairments). As part of the analysis of mental impairments, the ALJ considered the "paragraph B" criteria, rating Owens in four broad areas of functioning, finding he had: (1) a mild limitation in understanding, remembering or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation with regard to concentrating, persisting or maintaining pace; and (4) a mild limitation in adapting or managing oneself. Since Owens was not markedly limited in two of these areas, or extremely limited in one area, the "paragraph B" criteria were not satisfied. The

ALJ also found the "paragraph C" criteria were not satisfied.

The ALJ determined Owens had the RFC to perform medium work with the restrictions which mirrored those in the first hypothetical question posed to Ford. The ALJ reviewed Owens' testimony at the administrative hearing and determined that Owens' impairments could reasonably be expected to cause his symptoms. However, the ALJ found Owens' statements regarding the intensity, persistence and limiting effects were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 28).

The ALJ considered Owens' medical history, beginning with his September 2022 visit to his primary care provider, where he was referred for a psychiatry appointment. He was seen for an outpatient psychiatric evaluation on September 22, 2022, at Unity Health, where he was diagnosed with major depressive disorder, recurrent severe without psychotic features, anxiety disorder, and PTSD. The mental exam reflected him to be tearful, depressed, irritable, and showing pain. In addition, his appearance was normal, his attitude was not distractible, inattentive, he was not disinterested, indifferent, guarded, defensive, evasive, and he was cooperative. The plan going forward was a prescription for gabapentin and prazosin.

The ALJ chronicled visits to Owens' primary care provider and his therapy

appointments in late 2022 and early 2023. These visits reflected Owens' complaints of anxiety and depression as well as some improvement on occasion. In March of 2023, the ALJ noted Owens was hospitalized due to anxiety, depression, euphoria, and paranoid and suicidal thoughts. The ALJ described this event: "He later reported he had spent three days of not sleeping. He requested he be hospitalized. He was in inpatient care from March 7 to March 10 . . . He stabilized with medication and therapy." (Tr. 28).

The ALJ noted Owens was again hospitalized from June 19 to 24, 2024, for suicidal ideation and attempt. In the roughly fourteen months between the two hospitalizations, Owens was seen often for psychiatric care and medications were adjusted. The ALJ cited care provided in May, June, August, September, October, November, and December of 2023 and in early 2024. The early 2024 records reflected improvement – the ALJ noted Owens was going to the gym and working out in February, that he had a brighter affect in March and a visibly bright affect in June. The ALJ observed that the hospitalization was triggered by an encounter with an estranged daughter, and Owens was stabilized with home medication.

The ALJ then addressed the opinion evidence. The ALJ deemed the prior administrative findings regarding mental impairments "generally persuasive." (Tr. 31). These prior findings were that Owens was limited in job tasks and

interactions. The ALJ found persuasive the prior administrative medical findings of physical limitations which were nonsevere.

The opinion of APRN Reed[3] was not persuasive to the ALJ, who found the physical limitations not consistently reflected in Reed's own treating notes and not consistent with other treating providers. The ALJ found the mental limitations imposed by Reed were not fully supported "considering intermittent complaints of mental symptoms and infrequent notable signs including disturbances in mood or affect in treating notes" and because they were not consistent with noted response to care elsewhere in the record. *Id.*

The ALJ also found the opinion of Davis not persuasive. Again, the ALJ cited the lack of support in Davis' own notes and the inconsistencies with other provider notes which showed Owens' response to medications.

The ALJ found Owens unable to perform any of his past relevant work. Relying upon the testimony of Ford, the ALJ found there were jobs in the national economy which Owens could perform. As a result, the ALJ found Owens was not disabled.

[3] Plaintiff correctly notes the ALJ misspelled Reed's name as Whiney Read, rather than Whitney Reed. (Tr. 31).

*Claim One – the ALJ erred by rejecting Davis' psychiatric opinion as inconsistent with his own prior treatment notes when Davis incorporated those notes before concluding the plaintiff could not sustain a typical work month.*

The relevant regulations require the ALJ to assess the persuasiveness of Davis' mental medical source statement. (Tr. 1716-1719). At a minimum the ALJ must address the opinion's supportability and consistency. 20 C.F.R. § 416.920c(a), (c). Supportability is whether the opinion is supported by objective medical evidence and by the source's own explanation of the opinion. Consistency is whether the opinion is consistent with the other medical evidence in the record. 20 C.F.R. § 416.920c(c).

The ALJ addressed Davis' opinion as follows:

> The opinion of Jacob Davis, M.D., is not persuasive. Extensive limitations were found due to mental impairments, including inability to sustain a typical work month. It is not supported considering primary citation to symptoms and diagnoses. It is not consistent with the provider's own notes, which noted in August 2024, when care was transferred, the claimant had improvement. Follow up in September 2024 noted ongoing improvements and increased activity. It is not consistent with other provider notes also noting response to medications. [citations omitted]

(Tr. 31).

The ALJ got it right. Davis saw Owens twice. On the first visit, in August 2024, Davis noted improvement. (Tr. 1647-1653). "Patient notes improvements to

both mood and mental clarity." (Tr. 1652-1653). "Will continue with current medication regimen as patient is doing quite well." (Tr. 1653). At the September 2024 follow up, Davis reported Owens "appears to be doing well. He reports improvements to mood, mental clarity, and notes increased energy." (Tr. 1684). These observations in Davis' treatment notes are appropriate challenges to the supportability of his opinion that Owens was quite limited (among other things, Davis rated Owens with "marked" limitations in five areas of functioning. (Tr. 1717-1718)).

The ALJ also cited examination findings of other providers, which showed Owens positively responded to medications. These findings were not consistent with the opinion offered by Davis. For example, Owens reported improvement in his mood and motivation in February 2024 to Dr. Koppolu, as well as improvement in mood on Vilazodone to Dr. Koppolu in June and July 2024 (Tr. 1201, 1580, 1589).

Owens' argument is, in part, that the ALJ did not explain why Davis' opinion was inconsistent with the other medical evidence. But the ALJ provided citations and stated the other medical evidence showed Owens responded well to medications. Owens also inaccurately asserts Davis issued his opinion on October 9, 2024. Davis' opinion is dated September 13, 2024, two days after he saw

Owens for the second time. (Tr. 1719).

The ALJ did not err in assessing Davis' checkbox opinion.

*Claim Two – the ALJ formulating an RFC which did not adequately account for Owens' moderate limitation in concentration, persistence, and pace where the RFC contained no restrictions on production quotas, time off task, or sustained attention and the ALJ's Step Three findings established Owens is easily disrupted and requires redirection.*

As previously noted, the ALJ, addressing the "paragraph B" criteria, found Owens had a moderate limitation regarding concentrating, persisting or maintaining pace. Considering this finding at Step Three and his testimony at the hearing, Owens contends the ALJ should have included restrictions in the RFC for production quotas, time off task, need for redirection, or the ability to maintain pace through a workday. He also contends the ALJ erred in failing to consider he could be often absent from work receiving medical care. Owens reasons that these omissions from the RFC fatally infected the hypothetical question posed to Ford.

Initially, the hearing testimony offered by Owens was deemed as not entirely consistent with the medical evidence and other evidence of record. (Tr. 27). Owens' subjective statements were not wholly adopted by the ALJ, and they did not obligate the ALJ to incorporate them into the RFC.

In addition, the ALJ's Step Three finding did not obligate the ALJ to include the limitations in his RFC. This argument was addressed in an Arkansas case earlier this year:

> Plaintiff argues the ALJ's decision should be reversed because the ALJ found Plaintiff had a moderate limitation in adapting and managing herself but did not include this limitation in the RFC finding. However, including such a limitation is not required. *Hosch v. Colvin*, No. C15-2014-CJW, 2016 WL 1261229, at *5 (N.D. Iowa Mar. 30, 2016) ("The ALJ was not required to include specific, moderate limitations on concentration, persistence, or pace in his RFC assessment or hypothetical question to the Vocational Expert (VE), simply because he found plaintiff had these limitations in his 'paragraph B' criteria analysis at Step Three.").
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The Eighth Circuit has stated "the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir, 2018); *West-Viotay v. Saul*, 829 F. App'x 149, 150 (8th Cir. 2020) ("While the RFC findings did not specify work-related limitations based on some moderate functional-area limitations that the ALJ found under the 'paragraph B' criteria, the two findings serve distinct purposes at the separate steps of the sequential evaluation process.").

*Corley v. Comm'r, Soc. Sec. Admin*, No. 6:25-CV-06076, 2026 WL 980647, at *3–4 (W.D. Ark. Mar. 2, 2026), *report and recommendation adopted*, No. 6:25-CV-6076, 2026 WL 979583 (W.D. Ark. Apr. 10, 2026).

Owens bore the burden of establishing his claimed RFC. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). This burden would include offering evidence that medical appointments would preclude employment. Owens provided no such evidence. Here, the ALJ's RFC was supported by sufficient medical evidence.

*Claim Three – the ALJ formulated an RFC where the ALJ found three non-severe physical impairments but included no physical limitations and provided no functional analysis explaining how those conditions were considered.*

At Step Two, the ALJ found Owens suffered from three non-severe physical impairment: foot fracture (status post-surgery), arthritis/degenerative disc disease, and hypertension. Owens contends the ALJ disposed of all these non-severe impairments using boilerplate language rather than providing any analysis. This is incorrect.

Owens accurately observes the ALJ stated generally that he "considered all of the claimant's medical determinable impairments, including those that are not severe." (Doc. No. 5, page 17, quoting Tr. 25). This was not, however, the total extent of the ALJ's decision. The ALJ cited X-rays showing healing following the July 2023 foot surgery, with little to minimal tenderness in his toes in August. The ALJ stated Owens had reported greater activities of daily living to multiple

providers, including physical labor[4] and personal care. Owens also stated he was busy with landscaping projects and was working out at the gym in February 2024. The ALJ stated he considered the nonsevere impairments and cited instances to support his RFC determination of medium work.

*Claim Four – the ALJ erroneously evaluated Reed's opinion by improperly conflating the separate regulatory standards of supportability and consistency.*

The ALJ addressed Reed's check-box opinion as follows:

> The opinion of Whiney Read [sic], A.P.R.N., is not persuasive. Significant limitations were found in multiple activities, including in manipulating and performing exertional activities. *It was supported by joint swelling and limited range of motion, but this is not consistently reflected in this provider's own treatment notes, which note multiple conditions but is limited for consistent signs, particularly at more recent examinations.* The physical limitations are not consistent with other treating providers not generally noting significant musculoskeletal symptoms or significant care outside of his foot surgery and stent placement. The mental limitations given are not fully supported considering intermittent complaints of mental symptoms and infrequent notable signs [sic] including disturbances in mood or affect in treating notes. They are not consistent with noted response to care throughout the record. [citations omitted].

(Tr. 31).

Owens argues the ALJ erred by conflating the supportability and consistency

---

[4] For example, at a November Unity Health visit, Owens was reported to be working quite hard every day and "the other day I moved three tons of rock in a wheelbarrow down a narrow Japanese path." (Tr. 756).

analysis, focusing on the italicized sentence above. While that sentence does contain the words "supported" and "consistently" and "consistent," it does not follow that the ALJ erred. The italicized sentence notes the opinion is at odds with Reed's own findings – this is a supportability consideration. The ALJ continues, finding Reed's opinion at odds with the assessments reached by other treating providers – this is a consistency consideration. The ALJ properly analyzed Reed's opinion and did not conflate the requirements of the regulations.

Owens also maintains ALJ error in noting his mental limitations were not fully supported based upon his intermittent complaints to Reed and infrequent notable signs in her treating notes. There is no error here, as this simply describes the divergence between Reed's treating notes and her opinion, which is at the heart of the supportability consideration.

*Claim Five – the ALJ erroneously excluded evidence by failing to conduct the required good cause inquiry before declining to admit the evidence.*

The parties both point to C.F.R. §§ 404.935(a), 416.1435(a) and 404.935(b), 416.1435(b) as the controlling regulations. These regulations direct a claimant to submit or inform the ALJ about the evidence no later than five days before the date of the scheduled administrative hearing. Further, if a claimant misses this deadline but submits or informs the ALJ about written evidence before the hearing decision

is issued, the ALJ will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the ALJ about the evidence earlier; or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the ALJ about the evidence earlier.

There was no mention at the administrative hearing of evidence submitted after the deadline. In his decision, the ALJ acknowledged evidence was submitted less than five days before the hearing. The ALJ declined to admit the evidence because the requirements of C.F.R. § 404.935(b) and 416.1435(b) were not met. These requirements are the three exceptions listed above. The ALJ wrote: "There is no indication that the above exceptions apply, as the submitted evidence did not include any explanation as to why the evidence was submitted outside of the five day business period." (Tr. 22).

Owens' argument is primarily that the ALJ bore the burden of inquiring why the evidence was untimely and determining which, if any, of the exceptions would allow the admission of the evidence. According to Owens, "[T]he duty to conduct that inquiry rests with the ALJ, and it is typically discharged at the hearing." Doc. No. 8, page 9. No precedent is cited for this proposition. The undersigned

declines to adopt this position for three reasons.

First, as noted, there is no precedent cited for the ALJ bearing the burden of establishing an exception which allowed the admission of the tardy evidence. The notion that Owens' submission of untimely evidence triggers action on behalf of the ALJ runs counter to the general tenor of the regulations and to the bedrock principle that a claimant must establish his disability.

Second, Owens contends the ALJ has this burden and should typically discharge the duty at the hearing. In this case, Owens did not raise this issue at the hearing. Under his theory, it appears the ALJ not only had the burden of establishing the exception but also the burden of raising this issue. "This Court cannot assess what was lost because the ALJ never asked." Doc. No. 8, page 10. This goes too far. Owens had the opportunity to raise this at the hearing but did not.

Finally, Owens seems to suggest that the ALJ should have inferred that exception (2) should apply because he was hospitalized four months earlier for a suicide attempt. Owens states that "[P]ost-hospitalization psychiatric records from that period could bear directly on both the severity of the mental impairments and the adequacy of the RFC." Doc. No. 8, page 10. The record before the Appeals Council and before the Court, however, does not reflect what the excluded

evidence was. The Court cannot presume the relevance or importance of records not submitted. Also, the fact that record *could bear directly* on important issues is insufficient to dictate the result requested by Owens.

*Conclusion*

In summary, substantial evidence supports the determinations reached by the ALJ. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

Therefore, it is recommended that the final decision of Bisignano be affirmed and Owens' complaint be dismissed with prejudice.

IT IS SO ORDERED this 19th day of November, 2026.

UNITED STATES MAGISTRATE JUDGE